**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DAVID MCNEILLY and TABITHA MCNEILLY,**

Plaintiffs,

v.

**SUSAN MARIE MCNEILLY,**

Defendant.

Case No. 1:26-cv-2572

Hon. ____________

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

Plaintiffs David McNeilly and Tabitha McNeilly, through counsel, state the following Complaint against Defendant Susan Marie McNeilly:

## NATURE AND LIMITED SCOPE OF THE ACTION

1. This action concerns Defendant Susan Marie McNeilly's 2026 publication and continued republication of discrete, false statements of existing fact, published online, concerning Plaintiffs' status, knowledge, and conduct. Plaintiffs seek relief for the specific accusations identified below.

2. As to David, Plaintiffs' claims are limited to Defendant's recent statements asserting that David is a child or sexual predator and poses a sexual danger to children, including statements expressly identifying him as a 'child predator.' As to Tabitha, the claims are limited to statements asserting or factually implying that she knows David to be a sexual predator, conceals or protects that purported status, or is complicit in doing so.

3. Plaintiffs do not seek relief based on Defendant's allegations concerning historical events as such; communications to law enforcement, child-protection authorities, mandated reporters, or other investigative authorities; requests that authorities or institutions investigate; criticism of school, church, or governmental conduct; child-safety advocacy; or isolated rhetorical opinion

or insult. Nothing in this limitation admits the truth, accuracy, completeness, substantiation, good faith, or privileged status of any historical allegation or communication.

4. The challenged publications did not merely report allegations or advocate investigation. They asserted or factually implied that David is a child or sexual predator and poses a sexual danger to children, and that Tabitha knows of and conceals or protects that alleged status.

5. The claims therefore arise from discrete factual assertions and implications capable of objective verification.

6. Defendant directed the challenged accusations to Michigan school, parent, church, community, and media audiences and repeatedly identified Plaintiffs by name, photograph, family relationship, employment, school, church, coaching, or volunteer roles. The publications caused foreseeable and actual reputational and professional injury in Michigan. Tabitha's employment-related damages are alleged to the extent supported by evidence of causation.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of Michigan, Defendant is a citizen of California, and Tabitha's individual claim exceeds $75,000, exclusive of interest and costs.

8. Tabitha's amount in controversy includes past lost earnings and employment benefits resulting from the termination of her employment, written notice of which she received on August 17, 2026; future differential earnings and benefits to the extent proven and subject to mitigation; professional and reputational injury; and injury to feelings to the extent recoverable upon the required showing of fault. Immediately before termination, Tabitha earned approximately $44,200 annually. Her employment package also included or made available benefits that Plaintiffs reasonably estimate at approximately $10,000 annually, including employer

contributions toward family health coverage, retirement matching, and group disability and life insurance, for total annual salary and estimated benefits of approximately $54,200. Plaintiffs allege that the accusations remain publicly accessible online and that the continuing investigation and ongoing availability of child-safety accusations associated with Tabitha's name may materially impair her ability to obtain comparable child-facing employment for a substantial period. The duration and amount of any future differential will be established by evidence and remain subject to mitigation.

9. David's related claims arise from the same publications, factual record, and course of conduct and form part of the same Article III case or controversy. The Court therefore has supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a).

10. David and Tabitha McNeilly are citizens and domiciliaries of Michigan and reside in DeWitt, Michigan.

11. On information and belief, Defendant Susan Marie McNeilly is a citizen and domiciliary of California and resides in or near San Diego, California.

12. This Court has specific personal jurisdiction over Defendant because Plaintiffs' claims arise from Defendant's purposeful and repeated Michigan-directed conduct. Defendant used accounts displayed as 'Susan McNeilly' and 'sus_mcneilly' and directed the challenged material to, among others, Lansing Christian School, @lcspilgrims, WLNS-TV, Heritage Baptist Church in DeWitt, the City of DeWitt, the City of Lansing, and identified Michigan-focused Facebook groups and community pages.

13. Michigan was the focal point of the challenged publications and of the resulting reputational and professional harm.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims and a substantial part of the resulting injury occurred in this District. Ingham County is within the Southern Division of the Western District of Michigan.

## PARTIES

15. Plaintiff David McNeilly is an adult citizen of Michigan. During the relevant period, David participated in coaching, church, volunteer, and community activities involving children.

16. Plaintiff Tabitha McNeilly is an adult citizen of Michigan and David's spouse. Tabitha was employed as a teacher by Lansing Christian School until the School terminated her employment.

17. Defendant Susan Marie McNeilly is an adult citizen of California. Defendant is David's sister and Tabitha's sister-in-law.

18. Plaintiffs are private individuals. Before Defendant's challenged publications, neither Plaintiff voluntarily assumed a role of special prominence in a public controversy concerning Defendant's accusations.

## FACTUAL ALLEGATIONS

### Scope of the Challenged Publications

19. The challenged conduct consists of Defendant's public publication and republication of specific factual assertions or implications that David is a child predator and poses a sexual danger to children, and that Tabitha knows David to be a sexual predator, conceals or protects that purported status, or is complicit in doing so.

### The Challenged Publications

20. Beginning no later than July 12, 2026, Defendant published social-media content concerning Plaintiffs. The discrete publications presently known to Plaintiffs on which they base their

defamation claims include, *inter alia*, the July 25, July 30, August 3, August 5, and August 6 publications identified in Appendix A, together with any materially similar publications or republications revealed through discovery. Earlier posts presently known to Plaintiffs are alleged only as background and as evidence of the School's awareness and response, not as independent bases for liability or damages. Appendix A separately identifies supporting items used only for dissemination, course-of-conduct, or direct-contact allegations.

21. On July 25, 2026, at approximately 8:00 p.m., Defendant published a public Facebook Story that identified Tabitha by name as a first-grade teacher and stated that she 'protects multiple sexual abusers and does not practice safety for children around abusers.' In the same Story, Defendant identified David by name as 'Sexual abuser David McNeilly' and identified him as the fifth-grade girls' basketball coach and a volunteer who sat with children at lunch. In context, the quoted statements asserted existing facts concerning David's status and Tabitha's knowledge and conduct at the time of publication. (Appendix A-1; Appendix B-1 ¶¶ 5, 7-8; Appendix B-2 ¶¶ 5, 8.)

22. On July 30, 2026, using the older/original Facebook account that David identifies as Defendant's first Facebook account, Defendant directly tagged David in a post later preserved in David's 'Review posts and tags' interface as 'Susan McNeilly is with David McNeilly.' The attached collage expressly labeled him, 'David McNeilly - sexual abuser who Tom encourages to be around children,' and stated that '3 of these families send their children to Lansing Christian School.' Facebook generated a separate notification for this second same-day tag during the afternoon. In context, the publication asserted an existing fact that David was a sexual abuser and was being encouraged to remain around children. (Appendix A-2; Appendix B-2 ¶ 9.) Defendant's use of Plaintiffs' names, photographs, family relationship, and school or

child-related roles made the challenged accusations readily identifiable and facilitated dissemination to Michigan institutions, parents, and community audiences.

23. On August 3, 2026, at 10:26 p.m., in a school-directed Facebook post displaying Tabitha's photograph and tagging @lcspilgrims, Defendant stated: 'My next major concern is if you keep his wife, who has grossly been hiding it as well, what parameters will you be setting so that my brother is not in her room or around her students????' The photograph used in the post was the same photograph Tabitha had supplied to Lansing Christian School for its Facebook announcement of her hiring as the first-grade teacher. In context with Defendant's contemporaneous assertions that David is a child or sexual predator and poses a sexual danger to children, the statement asserted that Tabitha knew of and concealed the purported predator status Defendant attributed to David. (Appendix A-3; Appendix B-1 ¶ 10.)

24. On or about August 5, 2026, at approximately 12:14 a.m., Defendant published on Facebook, in a post tagging WLNS-TV and other accounts, the hashtag '#davidmcneillyisachildpredator.' The publication identified David by name within the hashtag and presented the characterization as an assertion of existing fact that David is a child predator. (Appendix A-4; Appendix B-2 ¶ 11.)

## Falsity and Objective Verifiability

25. Defendant's historical allegations concern events she claims occurred many years before the challenged 2026 publications. According to Defendant's own account, some of those alleged events date to periods when David himself was a minor. Plaintiffs do not admit the truth, accuracy, completeness, characterization, or legal significance of any historical allegation and do not seek adjudication of those allegations in this action. Such allegations do not, without more, establish the substantial truth of the materially different 2026 assertions that adult David

was then a child predator, posed a sexual danger to children, or was engaged in predatory conduct.

26. The challenged statements were false when published and remain false. At the time of each challenged publication, David was not engaged in sexual misconduct with children and did not pose a sexual danger to children. He is not presently engaged in such misconduct and does not presently pose such a danger. Defendant's assertions that David is a “child predator” or “sexual predator” are false.

27. The challenged statements concerning Tabitha were false when published and remain false. At the time of each challenged publication, Tabitha did not know David to be a child or sexual predator, did not conceal or protect any such purported status, and did not knowingly place children at risk of sexual misconduct by David. She does not now know David to be a child or sexual predator and does not conceal or protect any such purported status.

**Written Notice, Actual Awareness, and Continued Republication**

28. On August 3, 2026, Plaintiffs, through counsel, issued a written demand specifically identifying the accusations that David posed a danger to children and that Tabitha concealed or protected abuse; Plaintiffs unequivocally disputed those accusations as false, demanded removal, retraction or correction, and cessation of further publication, and directed preservation of evidence.

29. The written demand was delivered in San Diego, California 92107 on August 6, 2026. Defendant's subsequent public statements independently demonstrate actual awareness of the threatened defamation claim and of David and Tabitha's objection to the challenged accusations.

30. On August 6, 2026, at approximately 7:00 p.m., after the written demand had been delivered, Defendant publicly stated, 'Sue me bro, let's take it to court,' expressly referenced defamation, and republished material that stated, 'YOU SHOULD HAVE STAYED AWAY FROM CHILDREN' and, in the present tense, 'while you're a child predator.' The same republication included the statement, 'David and Tab trying their new scaring tactics to keep Susan quiet. Take me to court.' The publication demonstrated Defendant's awareness of Plaintiffs' threatened defamation claim and their objection to the challenged accusations. (Appendix A-5; Appendix B-2 ¶ 12.)

31. Defendant's decision to continue republishing the challenged accusations after receiving the written demand is alleged as evidence bearing on fault and state of mind. Plaintiffs do not rely on the demand itself as proof that the accusations were false.

## Publication to Third Parties

32. The challenged statements were published and republished to third parties through public social-media posts, stories, reels, comments, and school- or community-directed publications.

33. Defendant intentionally directed the challenged statements to Michigan parents, school personnel, church members, community residents, media accounts, and other Michigan audiences. David personally identifies, among others, Daniel Brady, Kevin Wernet, Kim Bouma, Aimee Tegtmeier, Jeanna Zajicek, and Sarah Pierce as people who saw, discussed, or reacted to Susan's publications, based on conversations with him or comments he personally observed. Tabitha personally identifies Kim Bouma, Aimee Tegtmeier, and Jeanna Zajicek as people who observed the posts and discussed them with her, and she identifies additional inquiries from Starla Ordiway and Aimee Tegtmeier. Their receipt and reactions support actual

dissemination within Plaintiffs' Michigan community. (See Appendix B-1 ¶¶ 8, 13; Appendix B-2 ¶ 16.)

34. Plaintiffs have also preserved screenshots from an LCS parent group chat that David understood to include more than 75 parents with children at Lansing Christian School. The screenshots show parents discussing the social-media allegations. They also reproduce a communication from Lansing Christian School stating that serious allegations against a parent volunteer coach were circulating online. The communication further states that, after consulting the School's legal counsel, LCS had initiated an independent external investigation. Tabitha also reports that LCS communicated about the situation and its response to a school community that included more than 500 parents at the time. (See Appendix B-1 ¶ 13; Appendix B-2 ¶ 16.)

35. Defendant's broader targeting also included direct-contact and dissemination conduct relevant to Plaintiffs' course-of-conduct allegations. On July 30, 2026, Defendant directly tagged David in two separate Facebook posts, and Facebook generated a notification for each tag. The first, discovered at approximately 8:30 a.m., is preserved as supporting evidence only in Appendix A-S1. The second, delivered later that afternoon, is also alleged above as Appendix A-2 because its visible collage expressly labels David a 'sexual abuser' who is encouraged to be around children. In a later Facebook reel posted on or about August 28, 2026, and directed to "LCS Parents," Defendant asked recipients to retain "any screenshots or information from David and Tabitha" concerning alleged "harassment and manipulation," stated that she would "be setting up a place to share those" materials, and encouraged the preservation and sharing of information involving Lansing Christian School or affiliated persons. The preserved screenshot displayed '589 views' at the time of capture, establishing at least that level of dissemination as

of that point. The reel is preserved as supporting item Appendix A-S2. Because the reel remained publicly accessible, additional views could have accumulated after the screenshot was taken and may continue to accumulate while the publication remains available. (Appendix A-S1; Appendix A-2; Appendix A-S2; Appendix B-2 ¶¶ 9, 14).

**LCS Investigation, Employment Consequences, and Ongoing Restrictions**

36. Lansing Christian School first learned of Susan's posts on July 12, 2026, when David telephoned Head of School Dr. Jeremy Zajicek about them. David also communicated that day with Brenda Resch, the School's Director of Strategic Initiatives. Thereafter, additional posts reached School leadership through members of the LCS community. Based on their communications with School personnel, David and Tabitha understood the School's response to have progressed from monitoring the situation to initiating an outside investigation, and Tabitha exchanged screenshots concerning the allegations with Jeanna Zajicek. These facts are alleged as evidence of the School's awareness and response, not as an assertion of the School's internal reasoning and not as an allegation that School leadership itself republished Susan's posts. (See Appendix B-1 ¶ 6; Appendix B-2 ¶¶ 6, 10.)

37. By July 17, 2026, Dr. Zajicek told David by text that an outside company or consultant would lead the investigation and would have the experience to 'wade through what is true and what is false.' On July 25, Defendant then published the Facebook Story identifying Tabitha as a first-grade teacher and David as a coach and school volunteer, labeling David 'Sexual abuser David McNeilly,' and stating that Tabitha 'protects multiple sexual abusers and does not practice safety for children around abusers.' (Appendix A-1; Appendix B-2 ¶¶ 6, 8.)

38. On July 30, 2026, when David asked whether Tabitha would be part of the investigation, Dr. Zajicek responded that she was 'part of the investigation and the public allegations.' That same

day, Lansing Christian School placed Tabitha on paid administrative leave and stated that it would provide four weeks of paid administrative leave beginning with the start of her 2026-2027 employment agreement. (See Appendix B-1 ¶ 9; Appendix B-2 ¶ 10.)

39. During the investigation and before the later September 3 lunchroom restriction, Lansing Christian School also asked David and Tabitha not to attend a school-wide budget meeting at which the annual budget would be voted on and not to attend the annual 'Meet the Teacher' night. (See Appendix B-2 ¶ 15.)

40. On August 14, 2026, Tabitha participated in a termination conversation with Dr. Zajicek and elementary principal Dr. Jean Prout. On August 17, 2026, she received written notice terminating her 2026-2027 employment agreement. The written notice relies on the at-will provisions of her employment documents but does not state a substantive reason for the decision. The investigation nevertheless continued. On August 20, Dr. Zajicek asked both Plaintiffs to sign authorizations allowing Rehmann to conduct background checks, and both signed. (See Appendix B-1 ¶ 12; Appendix B-2 ¶ 13.)

41. On September 3, 2026, while the investigation remained ongoing, Dr. Zajicek asked David to pick up his daughter for lunch rather than join her in the school lunchroom with other students. (See Appendix B-2 ¶ 15.)

42. Following termination, Tabitha has suffered lost earnings and benefits, diminished professional opportunities, and professional and reputational injury from publications portraying her as a teacher who knows David to be a sexual predator and conceals or protects that purported status. She has not yet pursued replacement child-facing employment. The investigation remains unresolved, and Defendant's accusations remain publicly accessible online. Because the accusations concern child safety and identify Tabitha as a teacher who supposedly

concealed or protected a sexual predator, Plaintiffs allege that prospective schools or other child-facing employers may encounter the accusations or inquire into the unresolved investigation during hiring or background review. The combination of those unresolved circumstances and the emotional distress caused by the publications has materially impaired Tabitha's present ability to pursue comparable child-facing employment. She intends to pursue reasonable employment opportunities as circumstances permit. Any future differential earnings or benefits are sought only to the extent proven and subject to mitigation. (See Appendix B-1 ¶¶ 14-18.)

## Other Harm

43. David has suffered injury to his coaching, volunteer, church, community, professional, and personal relationships and to his reputation from being publicly identified as a 'child predator' or 'sexual abuser' and portrayed as posing a sexual danger to children. He lost or was restricted from coaching and volunteer opportunities at Lansing Christian School and was excluded from school events, including a school-wide budget meeting and the annual 'Meet the Teacher' night. On July 24, 2026, Heritage Baptist Church leader David Lang informed David that his children's ministry activities would require an additional adult personally selected by current church leadership. David also reports that his work as a financial advisor fell below 20 hours per week after the accusations and below 5 hours per week during the first two weeks, and that he can identify specific business matters or opportunities lost during that period. (See Appendix B-2 ¶¶ 7, 15-19.)

44. Tabitha's alleged damages include lost employment compensation and benefits to the extent attributable to Defendant's conduct, diminished professional opportunities, reputational injury, and substantial emotional and functional harm. She describes severe sleep disruption, markedly

reduced appetite, periods of remaining in bed or on the couch and rarely leaving home, difficulty completing ordinary household tasks, heightened anxiety and fear in public, hair loss, gastrointestinal symptoms, and difficulty with memory and concentration. (See Appendix B-1 ¶¶ 14-18.)

45. Plaintiffs have suffered anxiety, embarrassment, mental anguish, disruption of family and community relationships, and significant interference with ordinary functioning. David describes sleeping fewer than four hours per night for approximately six weeks, continued interrupted sleep, a loss of approximately 25 pounds in less than five weeks, loss of appetite, gastrointestinal symptoms, markedly reduced work, and approximately six weeks of rarely leaving home. Tabitha describes similarly prolonged sleep, appetite, anxiety, and daily-functioning effects. Plaintiffs seek recovery for injury to reputation, occupation, profession, and feelings only to the extent permitted upon the required showing of fault under Michigan law. (See Appendix B-1 ¶¶ 16-18; Appendix B-2 ¶¶ 17-19.)

## COUNT I - DEFAMATION/LIBEL - DAVID MCNEILLY

46. David incorporates the preceding paragraphs as though fully set forth, subject to the express limitations on the scope of this action.

47. Count I is based on the challenged factual assertions and implications identified above and in Appendix A, including materially similar publications or republications revealed through discovery, concerning David's asserted status and the current risk he purportedly poses to children.

48. Defendant published and continued to republish false and defamatory factual assertions and implications that David is a child or sexual predator and poses a sexual danger to children, including identifying him as 'Sexual abuser David McNeilly,' using

'#davidmcneillyisachildpredator,' after actual notice republishing the present-tense statement 'while you're a child predator,' and later directly tagging David in a post whose visible collage labeled him 'David McNeilly - sexual abuser who Tom encourages to be around children.'

49. The statements were of and concerning David because Defendant named him, used his photograph or family relationship, identified his coaching and volunteer roles, and supplied facts from which intended readers readily understood that she referred to him.

50. In context, the challenged statements communicated assertions of existing fact that David is a child predator and poses a sexual danger to children. Those assertions were false when published and remain false.

51. The challenged public publications were false when published and remain false, were communicated to third parties, and were not privileged. In the context alleged above, Defendant's assertions that David is a 'child predator' impute criminal sexual misconduct and are actionable in themselves under MCL 600.2911(1).

52. Defendant acted at least negligently and, for the reasons alleged above, with knowledge of falsity or reckless disregard for truth.

53. The publications caused actual injury to David's reputation and to his coaching, volunteer, church, community, professional, and personal relationships. Among other effects, he lost or was restricted from coaching and volunteer opportunities at Lansing Christian School; was excluded from school events; became subject to an additional-adult requirement for children's-ministry activities at Heritage Baptist Church; and experienced a substantial reduction in his ability to work consistently as a financial advisor. David can identify specific business matters or opportunities lost during the period of markedly reduced work. The publications also caused

injury to his feelings, including humiliation, anxiety, embarrassment, mental anguish, and emotional distress.

54. Under MCL 600.2911(7), David seeks proven economic damages attributable to negligent publication, including attorney fees as provided by that subsection. David also seeks recoverable actual damages to reputation, occupation, profession, and feelings under MCL 600.2911(2)(a). Because Plaintiffs served a pre-suit demand for retraction and allowed a reasonable opportunity to retract, David also seeks exemplary damages to the extent permitted by MCL 600.2911(2)(b).

## COUNT II - DEFAMATION/LIBEL - TABITHA MCNEILLY

55. Tabitha incorporates the preceding paragraphs as though fully set forth, subject to the express limitations on the scope of this action.

56. Count II is based on the challenged factual assertions and implications identified above and in Appendix A, including materially similar publications or republications revealed through discovery, concerning Tabitha's knowledge and conduct.

57. Defendant published false and defamatory factual assertions and implications concerning Tabitha, including the statement that she 'protects multiple sexual abusers and does not practice safety for children around abusers' in the same Facebook Story that identified David as 'Sexual abuser David McNeilly,' and the later statement that David's wife had 'grossly been hiding it as well.' In context with Defendant's contemporaneous assertions that David is a child or sexual predator and poses a sexual danger to children, the challenged statements asserted or factually implied that Tabitha knew of the alleged danger Defendant attributed to David and knowingly concealed, protected, or was complicit in concealing it.

58. The statements were of and concerning Tabitha because Defendant named or depicted her, identified her as David's wife and a teacher, identified her school, and supplied facts from which intended readers readily understood that she was the subject.

59. In context, Defendant accused Tabitha of knowing that David posed a current sexual danger to children and knowingly concealing or protecting that purported danger. That assertion was false when published and remains false.

60. The challenged public publications were false when published and remain false, were communicated to third parties, and were not privileged.

61. Defendant acted at least negligently and, for the reasons alleged above, with knowledge of falsity or reckless disregard for truth.

62. The publications injured Tabitha in her profession as a teacher and in her reputation for honesty, integrity, judgment, and child safety. They caused employment disruption, lost earnings and benefits, diminished professional opportunities, reputational harm, and substantial emotional and functional effects, including severe sleep and appetite disruption, anxiety and fear, withdrawal from ordinary activities, difficulty maintaining household routines, and physical symptoms described above.

63. Under MCL 600.2911(7), Tabitha seeks proven economic damages attributable to negligent publication, including supported employment-related losses and attorney fees as provided by that subsection. Tabitha also seeks recoverable actual damages to reputation, occupation, profession, and feelings under MCL 600.2911(2)(a). Because Plaintiffs served a pre-suit demand for retraction and allowed a reasonable opportunity to retract, Tabitha also seeks exemplary damages to the extent permitted by MCL 600.2911(2)(b).

## COUNT III - TORTIOUS INTERFERENCE WITH TABITHA'S EMPLOYMENT RELATIONSHIP OR EXPECTANCY

64. Tabitha incorporates the preceding paragraphs as though fully set forth, subject to the express limitations on the scope of this action.

65. Tabitha had an existing at-will employment relationship with Lansing Christian School that was of present economic and professional value, together with a reasonable expectancy of continued employment and professional standing.

66. Defendant knew of that relationship and expectancy because she identified Tabitha by name as a Lansing Christian School teacher, identified David's coaching and volunteer roles at the School, targeted the School community, and directed accusations to persons positioned to affect Tabitha's employment.

67. Defendant made the school-directed publications intending to interfere with, or knowing that they were substantially certain to interfere with, Tabitha's employment relationship and professional standing at Lansing Christian School. Defendant did so by publishing and republishing the false accusations pleaded above in posts that identified and targeted Lansing Christian School and its parent community, including the July 25 Facebook Story identifying Tabitha as a first-grade teacher, labeling David 'Sexual abuser David McNeilly,' and stating that Tabitha 'protects multiple sexual abusers and does not practice safety for children around abusers.' Defendant also published the later concealment accusation identified in Appendix A-3.

68. Defendant's interference was improper and without justification because it was accomplished through the independently wrongful defamatory publications pleaded in Counts I and II. Count III is based on the same challenged factual assertions and implications pleaded above as

published and republished in posts identifying and targeting Lansing Christian School and its parent community.

69. As pleaded above, the timing and progression of Lansing Christian School's response provide circumstantial support that Defendant's challenged publications caused or substantially contributed to Tabitha's administrative leave and later termination. The School investigated the public allegations, placed Tabitha on administrative leave, terminated her employment, and continued the investigation thereafter. Plaintiffs presently have no direct statement from the School attributing the termination to Defendant's publications, and the written termination notice states no substantive reason.

70. As a direct and proximate result, Tabitha suffered lost wages and benefits, diminished professional opportunities, future differential earnings and benefits to the extent proven, professional and reputational injury, and other recoverable damages. Her present lack of replacement employment is alleged in the context of the continuing investigation, the ongoing public availability of the accusations, and the resulting impediment to pursuing comparable child-facing work. She intends to pursue reasonable employment opportunities as circumstances permit and remains subject to her continuing duty to mitigate.

## COUNT IV - FALSE LIGHT INVASION OF PRIVACY - DAVID AND TABITHA MCNEILLY

71. Plaintiffs incorporate the preceding paragraphs as though fully set forth, subject to the express limitations on the scope of this action.

72. Defendant publicized the challenged accusations through public social-media posts, stories, reels, comments, and republications directed to or reasonably accessible by school, parent, church, community, and media audiences.

73. As to David, Defendant's publications placed him before the public in the false light of being a child or sexual predator and posing a sexual danger to children.

74. As to Tabitha, Defendant's publications placed her before the public in the false light of knowing David to be a sexual predator and knowingly concealing, protecting, or being complicit in concealing that purported status.

75. Those portrayals attributed to Plaintiffs characteristics, conduct, knowledge, and circumstances that were false, unreasonable, and highly objectionable and placed each Plaintiff in a false position before the public.

76. For the reasons alleged above, Defendant knew or acted in reckless disregard as to the falsity of the challenged publicized matter and the false light in which Plaintiffs would be placed, including by deliberately continuing and republishing the same challenged accusations after receiving specific written notice disputing them as false.

77. As a direct and proximate result, Plaintiffs suffered reputational, professional, personal, and emotional harm, and Tabitha suffered pecuniary loss to the extent causally supported. Plaintiffs seek a single recovery for any indivisible injury arising from the same publication.

## COUNT V - INJURIOUS FALSEHOOD - TABITHA MCNEILLY

78. Tabitha incorporates the preceding paragraphs as though fully set forth, subject to the express limitations on the scope of this action.

79. Defendant published the false statements concerning Tabitha in a manner harmful to the interests of Tabitha having pecuniary value, including her employment, professional standing, and earning capacity as a teacher.

80. By identifying Tabitha as a Lansing Christian School teacher and directing the challenged accusations to the School, parents, and community members, including through the July 25 Story described above, Defendant intended that the publications result in harm to Tabitha's economically valuable interests or recognized or should have recognized that such harm was likely to result.

81. Defendant knew the challenged statements were false or acted in reckless disregard of their truth or falsity, as alleged above.

82. The challenged publications caused pecuniary loss to Tabitha to the extent proven, including lost wages and benefits, diminished earning opportunities, future differential earnings and benefits to the extent proven, and other economic loss causally attributable to Defendant's publications.

## COUNT VI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - DAVID AND TABITHA MCNEILLY

83. Plaintiffs incorporate the preceding paragraphs as though fully set forth, subject to the express limitations on the scope of this action.

84. Defendant engaged in a sustained and targeted course of conduct that repeatedly portrayed David to school, parent, church, community, and media audiences as a child or sexual predator and portrayed Tabitha as knowing of and concealing or protecting that purported status.

85. The alleged course of conduct, viewed as a whole, included Defendant's repeated dissemination of the challenged accusations; two direct Facebook tags to David on July 30 that generated notifications and immediate distress; Defendant's deliberate continuation and republication of the challenged accusations after specific written notice disputing them as false and demanding their removal and cessation; and later efforts to enlist Lansing Christian School

parents to gather and share adverse material concerning Plaintiffs and to create a place for further dissemination. Plaintiffs do not rely on the LCS-parent solicitation or the first direct-tag post as separate defamatory statements; those items are alleged as part of the continuing, targeted, and escalating course of conduct. The second July 30 direct-tag post is also alleged separately as Appendix A-2 because its visible collage contains an additional current-status accusation against David.

86. Defendant intended to cause Plaintiffs severe emotional distress or acted recklessly in disregard of the probability that the alleged course of conduct would cause such distress.

87. The alleged conduct directly and proximately caused severe emotional distress to David and Tabitha and resulting compensable harm. David describes six weeks of extreme sleep disruption, a roughly 25-pound weight loss, markedly reduced work and daily functioning, gastrointestinal symptoms, and anxiety associated with communications about the accusations. Tabitha describes severe sleep and appetite disruption, withdrawal from ordinary activities, difficulty completing household tasks, heightened anxiety and fear, hair loss, gastrointestinal symptoms, and concentration or memory difficulties.

## COUNT VII - CIVIL STALKING - MCL 600.2954 - DAVID MCNEILLY

88. David incorporates the preceding paragraphs as though fully set forth, subject to the express limitations on the scope of this action.

89. The two direct contacts supporting Count VII occurred on July 30, 2026, before the formal written demand. David did not consent to either Facebook tag. After the first contact, he was concerned that Susan would tag him again before Facebook would permit him to block her older/original account again, and he set a timer for the earliest point at which the platform would allow him to block that account. On August 3, 2026, Plaintiffs, through counsel, sent

Susan a written cease-and-desist and retraction demand requiring removal of posts, comments, replies, reviews, tags, mentions, links, and other publications containing the challenged accusations and specifically demanding that she cease publishing or republishing those accusations, including by tagging, mentioning, or linking to either client. The demand was delivered in San Diego, California on August 6, 2026. Because the July 30 contacts preceded that written demand, David relies on the allegation that the contacts were initiated without his consent, not on the later demand as a prerequisite to lack of consent.

90. On July 30, 2026, using the older/original Facebook account that David identifies as Susan's first account, Susan used Facebook's tagging functionality to direct two separate posts to David personally. Both appeared in David's own 'Review posts and tags' interface as 'Susan McNeilly is with David McNeilly,' and Facebook generated a notification for each tag. David later supplied both screenshots to counsel in his August 29 email with the subject 'Direct tags.' (Appendix A-S1; Appendix A-2; Appendix B-2 ¶ 9.)

91. David discovered the first direct tag at approximately 8:30 a.m. on July 30 while he was leading a business-networking meeting as president of the group. Facebook notified him that Susan had tagged him in a post. The preserved 'Review posts and tags' screenshot contains a caption beginning, 'Your hands are far from clean!!! Lying to your entire congregation, putting other people's children in danger,' and the attached material includes the statement '*Podcasts are being scheduled.' David's heart immediately dropped, his stomach went into knots, and he felt fearful and anxious while trying to mitigate damage. Heather Vida, the group's secretary, sat next to David during the meeting and later commented that he seemed very distant and asked whether he was okay. (Appendix A-S1; Appendix B-2 ¶ 9.)

92. The second direct tag arrived later that afternoon while David was attempting to work, and Facebook generated a separate notification. The preserved screenshot again displays 'Susan McNeilly is with David McNeilly.' Its attached collage labels him, 'David McNeilly - sexual abuser who Tom encourages to be around children,' and states that '3 of these families send their children to Lansing Christian School.' The second contact produced the same fear, anxiety, and physical reaction and left David unable to process or accomplish additional work that day. (Appendix A-2; Appendix B-2 ¶ 9.)

93. Both July 30 direct tags were delivered through separate Facebook notifications and were presented in David's 'Review posts and tags' interface. David did not invite or consent to either tag and sought to prevent further direct contact by blocking Susan's older/original Facebook account as soon as Facebook's platform restrictions permitted him to do so.

94. The direct-tag contacts caused David actual distress separate from the general fact of public dissemination. The first caused an immediate physical and emotional reaction during a professional meeting and was observable to another participant; the second caused the same reaction and prevented David from completing additional work that day. Those contact-specific reactions occurred against a broader period of severe sleep disruption, appetite and weight loss, reduced work, anxiety, and impaired daily functioning. (See Appendix B-2 ¶¶ 9, 18-19.)

95. Count VII does not seek liability for public criticism, child-safety advocacy, reports to law enforcement or investigative authorities, requests for investigation, or communications with third parties. It is limited to the separate act of twice directing identified Facebook posts into David's account through tagging and notifications without his consent. Susan could communicate publicly or with third parties without directing those posts to David personally,

and the repeated direct tags served no apparent investigative, reporting, or other legitimate purpose requiring personal delivery to him.

96. The two July 30 direct-tag posts were separate, noncontinuous acts evidencing a continuity of purpose. Each constituted electronic contact initiated without David's consent. The later August 3 written demand further expressed Plaintiffs' desire that Susan cease tagging, mentioning, or linking to them, but David's allegation that the July 30 contacts were unconsented does not depend on that later demand.

97. The repeated direct contacts would cause a reasonable person in David's circumstances to feel harassed or intimidated and actually caused David substantial emotional distress. The first contact caused an immediate physical and emotional reaction during a professional meeting, and the second caused the same reaction and prevented him from completing additional work that day.

98. For the factual reasons alleged above, the direct-contact conduct on which this Count is based was not constitutionally protected activity and did not serve a legitimate purpose. This Count is directed to the repeated, unwanted delivery of posts to David through Facebook tagging, not to the content of otherwise protected public speech or petitioning activity.

99. As a direct and proximate result of the conduct prohibited by MCL 750.411h, David suffered damages recoverable under MCL 600.2954 and seeks damages, exemplary damages, costs of the action, and reasonable attorney fees to the extent authorized by that statute.

100. Because monetary damages would not fully remedy future unconsented direct electronic contact and the resulting invasion of David's interest in being left alone, David also seeks narrowly tailored preliminary and permanent equitable relief against recurrence of the direct-

contact conduct, to the extent permitted by law. This request does not seek to restrain public speech to third parties, reports to law enforcement or investigative authorities, requests for investigation, child-safety advocacy, institutional criticism, protected opinion, or lawful participation in this litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendant and award:

a. On Counts I and II, economic damages, including attorney fees, recoverable under MCL 600.2911(7) to the extent proven;

b. On Counts I and II, upon the required showing of fault, actual damages recoverable under MCL 600.2911(2)(a), and exemplary damages to the extent permitted by MCL 600.2911(2)(b);

c. On Counts III through VI, compensatory damages to the extent permitted and proven under each cause of action, without duplicative recovery for an injury compensated under another Count;

d. On Count VII, if sustained, damages incurred as a result of the prohibited conduct, together with exemplary damages, costs of the action, and reasonable attorney fees as authorized by MCL 600.2954;

e. Prejudgment and post-judgment interest and taxable costs to the extent allowed by law;

f. Upon final adjudication that specific challenged statements are false and actionable, narrowly tailored injunctive relief prohibiting republication of those same adjudicated false statements, to the extent permitted by the First Amendment and applicable law;

g. Preliminary and permanent equitable relief, to the extent permitted by law, prohibiting Defendant from initiating or causing unconsented direct electronic contact with David through a social-media tag, mention, direct message, or comparable platform function used to cause a communication or notification to be delivered directly to David's account, subject to appropriate exceptions for communications through counsel, legal process, communications required by law or court order, and bona fide emergencies; and

h. Such other relief as the Court deems just and proper.

Plaintiffs seek one satisfaction only for any single, overlapping injury.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Dated: September 11, 2026

**THE LAW OFFICES OF STEVEN W. DULAN, PLC**

By: ______________________________

Steven W. Dulan (P54914)
Attorney for Plaintiffs
5311 Park Lake Road
East Lansing, MI 48823
Telephone: (517) 332-3149
Email: swdulan@stevenwdulan.com